UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**CHRIS MEINHART,**
   **Administrator of the Estate**
   **Of Anthony S. Lombardo,**
                              **Plaintiff**

**v.**                                                  **Civil Action Number**
                                                        **3:04CV289-J**

**MICHAEL J. ASTRUE, Commissioner,**
   **Social Security Administration,**
                              **Defendant**

### MEMORANDUM OPINION

   This matter, before the court on plaintiff's[1] request for review of the decision of the defendant Commissioner denying Anthony Lombardo's claim to disability insurance benefits,[2] has a long, unusual, and rather unfortunate history. He originally applied for supplemental security income payments as well as disability insurance benefits. His "fully insured" status expired June 30, 1996. As a result, the Commissioner was called upon to determine whether Mr. Lombardo was disabled as of the date of the administrative decision, and, if so, whether that disability commenced prior to July 1, 1996.

   Mr. Lombardo was assisted by a lay representative at the administrative level, and he was

---

[1] Chris Meinhart is the appointed public administrator of the estate; he has been substituted for Mr. Lombardo as party plaintiff.

[2] The Commissioner found Mr. Lombardo disabled as of April 10, 2001, such that he was entitled to supplemental security income payments until his death. That determination is not a subject of this appeal.

1

not represented by counsel at the outset of this case. Concerned that he did not understand the nature of appellate review versus review of new evidence, the Court asked the United States Magistrate Judge to conduct a hearing to explore whether the matter should be remanded for consideration of new evidence. During the pendency of those proceedings, Mr. Lombardo died in a house fire. The matter was held in abeyance while Mr. Lombardo's family attempted to agree on an administrator and decided whether to proceed with this action.[3] The matter is now submitted for decision.

Plaintiff filed his application in May of 2001, alleging that he had been unable to engage in any substantial gainful employment since August of 1994. His fully insured status expired June 30, 1996. After a hearing, the Administrative Law Judge ("ALJ") determined that prior to July 1996, Mr. Lombardo's bipolar disorder, alcohol addiction and narcissistic personality disorder were severe impairments that rendered him unable to perform any of his past relevant work. However, the ALJ further held that as of June 30, 1996, Mr. Lombardo retained the residual functional capacity to perform a significant number of jobs existing in the national economy.

The first issue is whether the matter should be remanded for consideration of additional evidence that was not part of the administrative record. The limited circumstances under which such a remand is permitted arise when the party seeking remand shows that: (1) new evidence is available; (2) the evidence is material; and (3) good cause exists for not first presenting the evidence to the ALJ. Melkonyan v. Sullivan, 501 U.S. 89, 98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991); Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (6th Cir.1984). It must

---

[3] See docket number 24.

be emphasized that the law requires that all three of these factors be met before remand is appropriate.  The burden of showing that a remand is appropriate is on the claimant.  <u>Oliver v. Sec'y of Health & Human Servs.</u>, 804 F.2d 964, 966 (6th Cir.1986).  In the case at bar, the plaintiff has failed to carry his burden of showing any one of the factors.

Tendered evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." <u>Sizemore v. Sec'y of Health & Human Servs.</u>, 865 F.2d 709, 711 (6th Cir.1988); <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991).  The evidence that plaintiff believes meets these three requirements consists of two records reflecting Global Assessment of Functioning ("GAF") scores in the 40-50 range for the 1994-1995 time period.  According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), Axis V's "Global Assessment of Functioning" scale considers "psychological, social, and occupational functioning on a hypothetical continuumof mental health-illness."  DSM-IV at 32.  The range 41-50 is described as appropriate for "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  The range of 51-60 is described as appropriate for "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."

Even leaving aside for a moment the principle that disability is a legal decision, not a medical decision, it is readily apparent that the GAF, standing alone, is a poor tool for

3

determining ability to engage in substantial gainful employment.  One reason is that, "occupational functioning" is but one of three fields considering in assessing the GAF.  Another problem with using it as a tool for determining disability is that any system that seeks to compress all psychiatric and psychological considerations into a scale of one to one hundred is necessarily approximate, subjective, and subject to considerable variation in interpretation even among experts who agree with one another about a patient's degree of impairment in any specific area.  Finally, it must be noted that a particular GAF range is considered appropriate for several alternative reasons; some of the factors that might result in a low GAF would be largely irrelevant to occupational capacity (for example, suicidal ideation), and it is equally clear that someone with a higher GAF might, in fact, have symptoms that severely interfered with the ability to work (for example, conflicts with co-workers).

      Consequently, while the GAF may represent a single piece of information to be considered in a disability inquiry, it cannot substitute for specific information about particular capabilities and characteristics.  It necessarily follows that any party who seeks to show that a GAF number alone "might have changed the outcome of the prior proceeding." Melkonyan, supra, 501 U.S. 89, 98, has an uphill battle.  In this case, the argument fails because of specific information in the record.  The ALJ did, indeed, refer to the "paucity of mental health treatment records or evaluations between August 1994 and October 1995."  Tr. 21.  However, the ALJ went on to note that "the evidence indicates that [his period of extreme symptomatology] was likely related to his alcohol abuse and lack of mental health treatment."  Tr. 22.  The ALJ observed that the October 1995 through January 1996 exams indicated rapid improvement once he stopped drinking and complied with treatment recommendations.  Under these circumstances,

4

there is simply no reasonable possibility that two GAF scores would result in a different outcome.

The evidence is also not "new." Evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). New evidence must indeed be new; it cannot be cumulative of evidence already in the record. See Szubak v. Secretary of Health and Human Servs., 745 F.2d 831, 833 (3d Cir.1984), cited in Robertson v. Shalala, 91 F.3d 144 (6th Cir. July 8, 1996).

It is obvious that the records were in existence at the time of the administrative hearing; thus, the only question is whether they were not available to Mr. Lombardo. Examination of the transcript of the hearing conducted by the Magistrate Judge establishes that they were, indeed, available to Mr. Lombardo. The records custodian for Seven Counties did not suggest that the files had been lost or were otherwise unavailable at the time. Mrs. Lombardo testified that she easily obtained a copy of the records from Seven Counties when she asked for them [Hearing Transcript, docket numbers 23 and 30, at page 38-40]. Dr. DeLand's testimony suggested the possibility that Mr. Lombardo's prison medical files might have been archived or otherwise not have been readily available, but Dr. DeLand made it clear that he retained copy of his office chart, two reports he wrote regarding his patient, and some "basic information regarding his evaluation and history" [Hrg. Tr. 19]. Mr. Lombardo himself admitted that once he realized the records were needed, he knew immediately that they existed and where to get them [Hrg Tr. 59]. Indeed, Mr. Lombardo was able to obtain the letter from Dr. DeLand only six days after the ALJ decision, long before the Appeals Council ruling [Hrg. Tr. 42].

5

Furthermore, the record contradicts Mr. Lombardo's assertion that he did not know until the ALJ's decision that the evidence would be needed. Mr. Lombardo, who holds a masters degree and completed a year of law school (Tr. 79), was present when the administrative hearing was initially convened on December 13, 2002. The ALJ explicitly stated that he would "need any prison records as far as counseling during the course of the years that Mr. Lombardo was in prison." Tr. 796. The ALJ announced that he was continuing the hearing and would reconvene in March in order to allow all such records to be submitted.

Neither does the record support any assumption that Mr. Lombardo failed to understand the nature of the GAF information. Before concluding the hearing, the ALJ asked about additional records:

> ALJ: Anything else you wish to submit?
>
> REP: No.
>
> *CLMT: What was Pierce's GAF?*
>
> ALJ: All right. The hearing is concluded and the record is closed.

Tr. 867-868 (emphasis added).

In view of the failure of both the "new" and "material" elements of this inquiry, it is unnecessary for the Court to address the "good cause" prong of the tripartite test. There is no basis for remanding this matter for consideration of the newly tendered information.

Accordingly, the Court returns to appellate review of the administrative decision, based on the record as it was presented to the ALJ. If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind

6

might accept as adequate to support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991). The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion. Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

The ultimate question is whether Mr. Lombardo's disability commenced at any time between August of 1994 and July of 1996. As part of that inquiry, the ALJ was required to consider Mr. Lombardo's alcohol abuse, in that a finding of disability is precluded if alcoholism or drug addiction is a contributing factor. 42 U.S.C. Sec. 423(d). In December of 1994, Mr. Lombardo reported to the University of Louisville Hospital Emergency Department that he was drinking a quart of vodka a day. Tr. 348. The medical assessment included alcohol abuse "continuous." Tr. 367.

Mr. Lombardo was incarcerated between May 1995 and July of 1996. The ALJ reasonably assumed that incarceration interfered with Mr. Lombardo's access to alcohol; thus, this period provided interesting information bearing on the question of whether Mr. Lombardo's alcoholism was a factor contributing to disability. In October of 1995, Mr. Lombardo was treated at the Kentucky Correctional Psychiatric Center (KCPC). Tr. 135. He was admitted again for evaluation on January 16, 1996. Tr. 130. His treating physician, Dr. DeLand, provided a March 6, 1996 competency evaluation which explicitly noted that upon readmission "his condition had already improved as compared to his condition on discharge from KCPC this past fall." Tr. 389. Dr. DeLand noted no symptoms of psychosis, and opined that Mr. Lombardo's

cognitive functions of attention/concentration and abstract thought were substantially intact. Dr. DeLand entered a diagnosis of alcohol induced dementia, but observed that Mr. Lombardo's level of functioning was "still quite good." Tr. 390. The psychiatrist believed that Mr. Lombardo would continue to improve for some months. A medical expert reviewed the records and testified at trial regarding those records. She observed that there was a possibility of minimal limitations with complex tasks, but that his problems were generally mild prior to July of 1996. Tr. 843.

The ALJ accepted the opinion of the testifying expert and found that Mr. Lombardo was unable to perform skilled worked on or before June 30, 1996, but that he retained the ability to perform semi-skilled work. Tr. 22. As Mr. Lombardo's previous work as a stockbroker was skilled, the ALJ took evidence from a vocational expert and relied on that testimony to determine that there existed a substantial number of jobs that Mr. Lombardo retained the ability to perform as of June 30, 1996.

Thus, substantial evidence supports the decision of the ALJ, and the decision should be affirmed. A judgment in conformity has this day entered.